# Illinois Official Reports

## Appellate Court

---

### *People v. Aikens*, 2016 IL App (1st) 133578

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JANSEN AIKENS, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket Nos. 1-13-3578, 1-15-1522 cons. |
| Filed<br>Rehearing denied | September 12, 2016<br>October 17, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-20502; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Judgment affirmed in part; sentence reversed and remanded with directions; mittimus corrected. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Caroline E. Bourland, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Matthew Connors, and John Cooper, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE CONNORS delivered the judgment of the court, with opinion.<br>Justices Cunningham and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1      Following a bench trial, defendant Jansen Aikens was found guilty of several counts of attempted first degree murder of a peace officer, attempted first degree murder, aggravated discharge of a firearm, and aggravated unlawful use of a weapon (AUUW). The trial court sentenced defendant to 20 years' imprisonment for the attempted murder convictions, with an additional mandatory 20-year enhancement for personally discharging a firearm, for a total of 40 years' imprisonment. On appeal, defendant contends that the former exclusive jurisdiction provision of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-120 (West 2012)) violates the eighth amendment of the United States Constitution, the proportionate penalties clause of the Illinois Constitution, as well as federal and state due process rights. Defendant also contends that Illinois's sentencing scheme violates the requirement that a juvenile's youth must be considered before imposing mandatory adult minimum penalties. Defendant additionally alleges that his convictions violate the one-act, one-crime doctrine. For the following reasons, we affirm the judgment of the trial court in part, reverse the sentence, remand for resentencing, and correct the mittimus.

¶ 2                         BACKGROUND

¶ 3      At trial, the State presented evidence that on October 13, 2012, Chicago police officers George Georgopoulos, Adamiak, and Stevens were patrolling the area of Sunnyside Avenue and Sheridan Road in plain clothes and in an unmarked car. Shortly after midnight, the officers observed Paris McKinley, a known "Black P-Stone," standing at the northwest corner of Sunnyside Avenue and Sheridan Road with two other young men, including defendant. The officers testified that the corner was known territory of a rival gang. The officers decided to stop McKinley and question him. Officer Georgopoulos approached McKinley while the other two officers remained in the car. The officers in the car saw the other two men quickly walk away, so they followed them in the unmarked police car. Defendant held his waistband and began running.

¶ 4      All three officers testified that defendant then stopped walking, retrieved an item from the right side of his waistband, turned, and stood with both hands on a handgun and fired multiple shots at the unmarked police car. Defendant then continued walking away. Defendant was stopped near 4530 North Broadway Street, and a Smith and Wesson model 36 five-shot .38-caliber revolver was recovered a few feet away from where defendant was detained. The cylinder contained five spent cartridge cases.

¶ 5      Following defendant's arrest, he signed a statement that indicated on the night in question he was on the corner of Sunnyside Avenue and Sheridan Road with McKinley and another man he did not know, watching for rival gang members. Defendant stated that an unmarked police car pulled up and an officer asked to talk to McKinley. Defendant stated that he began to walk away but then started running when he saw the police car following him. Defendant stated that he then stopped running, pulled out a gun, took a position by a parked car, and shot at the police car four to five times. Defendant stated that he tried to hit the police because he wanted them to stop chasing him. He then ran toward Broadway Street, but the police kept chasing him. He dropped the gun and got on the ground, at which time he was arrested.

¶ 6      The State put into evidence a certification from the Illinois State Police that indicated that defendant did not possess a Firearm Owners Identification (FOID) card on October 13, 2012.

¶ 7     At the close of evidence, defendant was found guilty of all charges. At sentencing, Christina Cariglio, a mitigation specialist, submitted a mitigation report and testified. Cariglio testified that defendant's mother abused drugs and alcohol when she was pregnant and that, when she had another son, defendant became that boy's parent and protector because their mother was not there for him. They were eventually placed in foster care and later adopted by Deidre Aikens. Cariglio averred that as a teenager defendant lived on the street with his girlfriend for some time, as well as an apartment she shared with gang members, during which time he joined a gang for protection. When defendant was a junior in high school, he received an early acceptance letter from the Illinois Institute of Technology due to his academic excellence.

¶ 8     Cariglio stated that, since the time of defendant's arrest, he cut off all ties with his gang and that a jail guard had informed her that defendant was "the most well mannered boy [he] ha[d] ever come across while working in Division 9." Cariglio concluded her mitigation report by stating:

> "I have not yet come across a client so full of potential as [defendant]. Nor have I met a more supportive family than the Aikens family. I have complete faith that [defendant] will rehabilitate and go on to become a successful contributing member of our society. [Defendant] is blessed with intelligence, creativity, a kind heart, an appreciation for those less fortunate, a terrific support system in his family, and a selflessness that puts most adults to shame. I hope that you will consider all of the information I have provided when deciding [defendant's] fate."

¶ 9     Deidre Aikens testified that she legally adopted defendant in 2005 and that he had previously suffered from both physical and sexual abuse. She testified that while he improved in her home, he still exhibited symptoms resulting from his upbringing.

¶ 10    Jeffrey Tabares, a lawyer, testified that he coached defendant in Little League and mentored him after that. Tabares testified that defendant was captain of the Little League team because he was understanding toward the younger players and those not as skilled.

¶ 11    In allocution, defendant apologized for his actions to the court and to his family and to the "Chicago Police Department for making their officers feel as if their lives were in danger." Defendant stated that he could "see the impact it has on the people who love [him] and the position that [he] put the officers in that night." Defendant stated that he was now able to appreciate the privileges he previously took for granted and planned to be a role model to other kids headed down the wrong path once he served his time.

¶ 12    After hearing the evidence during the sentencing hearing, the trial court noted that the evidence against defendant was substantial in that he was identified, the gun was recovered, and that there was a written confession. The trial court stated that the "crime itself was horrific, extremely violent, [and] extremely dangerous." However, the trial court noted that defendant was young, had no criminal history, and that his social history was "quite troubling." The trial court stated, "[t]he conversation about how much discretion judges should have in sentencing in criminal cases is active conversation. And that's a conversation perhaps for another day. I will sentence [defendant] with what the legislature says I have to work with in this case." The trial court further noted, "I am mindful that I am going to be sentencing him to more years than his life is now. And it seems to be an unimaginable amount of time especially for a teenage child." The trial court then sentenced defendant for 20 years in prison for the attempted murder convictions, plus another 20 years for personally discharging a firearm. The trial court further

found that the aggravated discharge of a firearm toward a peace officer would merge into the attempted murder of a peace officer counts, and that defendant would serve three years, to run concurrently, for the aggravated unlawful use of a weapon conviction. Defendant now appeals.

¶ 13                                                        ANALYSIS

¶ 14       On appeal, defendant first contends that Illinois's former exclusive jurisdiction statute violates the eighth amendment of the United States Constitution, the proportionate penalties clause of the Illinois Constitution, as well as federal and state due process rights, because the former exclusive jurisdiction provision does not take into account the inherent differences between juveniles and adults. The State responds that because Illinois's "legally indistinguishable" automatic transfer statute was recently held to be constitutional by the Illinois Supreme Court, defendant's argument must fail. We agree with the State.

¶ 15       "Constitutional challenges carry the heavy burden of successfully rebutting the strong presumption that statutes are constitutional." *People v. Patterson*, 2014 IL 115102, ¶ 90. We have a duty to uphold the constitutionality of a statute whenever reasonably possible, resolving any doubts in favor of the statute's validity. *Id.* We review the constitutionality of a statute *de novo*. *Id.* (citing *People v. Dabbs*, 239 Ill. 2d 277, 291 (2010)).

¶ 16       At the time of defendant's arrest, the former exclusive jurisdiction statute of the Act stated as follows:

> "Proceedings may be instituted under the provisions of this Article concerning any minor who prior to the minor's 17th birthday has violated or attempted to violate, regardless of where the act occurred, any federal or State law or municipal or county ordinance ***. *** Except as provided in Sections 5-125, 5-130, 5-805, and 5-810 of this Article, no minor who was under 17 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State." 705 ILCS 405/5-120 (West 2012).

¶ 17       This "exclusive jurisdiction" provision meant that defendant, who was 17 years old at the time of the felony offense, was automatically excluded from juvenile court and faced the same procedures and sentencing provisions as adults. *Id.* However, Illinois no longer excludes 17-year-olds from juvenile court. See Pub. Act 98-0061 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120 (West 2012)) ("no minor who was under 18 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State"). The amendment applies only to offenses committed after the effective date of the amendment (January 1, 2014) and thus does not apply to defendant. See *People v. Richardson*, 2015 IL 118255.

¶ 18       Defendant contends that the former provision violates the eighth amendment of the United States Constitution, as well as the proportionate penalties clause of the Illinois Constitution. The eighth amendment prohibits "cruel and unusual punishments" for criminal offenses. U.S. Const., amend. VIII. The Illinois Constitution, which extends beyond the eighth amendment, provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11; *People v. Clemons*, 2012 IL 107821, ¶ 29.

¶ 19       Defendant argues, citing *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012), *Graham v. Florida*, 560 U.S. 48 (2010), and *Roper v. Simmons*, 543 U.S. 551 (2005), that because "juveniles like [defendant] are categorically less culpable than adults, *** they should not be

automatically subjected to the same treatment and punishment as adults, without any antecedent findings that it would be inappropriate to prosecute them as juveniles." However, as defendant notes, this argument was recently rejected in *Patterson*, 2014 IL 115102.

¶ 20 The defendant in *Patterson* argued that the mandatory transfer provision of the Act (705 ILCS 405/5-130 (West 2008)), automatically transferring certain minors from the jurisdiction of juvenile court to the adult criminal court, was unconstitutional. The automatic transfer statute, at the time of the defendant's arrest, required juveniles who were at least 15 years old and charged with one of the enumerated crimes to be prosecuted in adult criminal court rather than in juvenile court. One of the specified crimes was aggravated criminal sexual assault. Because the defendant was 15 years old when he was convicted of aggravated criminal sexual assault, the provision required him to be automatically transferred to criminal court for trial and, if convicted, sentenced as an adult. *Patterson*, 2014 IL 115102, ¶ 91.

¶ 21 The defendant in *Patterson* argued that the automatic transfer statute did not take into account the inherent differences between juveniles and adults, including juveniles' reduced culpability and greater ability to change. The defendant argued that the provision was fatally flawed and violated the eighth amendment of the federal constitution and the proportionate penalties clause of the Illinois Constitution. *Id.* ¶ 89. The defendant contended that *Miller*, *Graham*, and *Roper* required a finding that the transfer statute was fatally flawed because it did not take juveniles' distinctive characteristics into account and that the Supreme Court had concluded that juveniles "are constitutionally different from adults for purposes of sentencing." *Miller*, 567 U.S. at ___, 132 S. Ct. at 2464.

¶ 22 Our supreme court stated that "[a]s this court has repeatedly explained, access to juvenile courts is not a constitutional right because the Illinois juvenile justice system is a creature of legislation" (*Patterson*, 2014 IL 115102, ¶ 104 (citing *People v. M.A.*, 124 Ill. 2d 135, 141 (1988)) and "[w]hether a defendant is tried in juvenile or criminal court is purely a matter of procedure." *Id.* (citing *City of Urbana v. Andrew N.B.*, 211 Ill. 2d 456, 486 (2004) (Freeman, J., dissenting)). Moreover, our supreme court noted that "[e]ven if we accept the assertion that a juvenile who is convicted in criminal court is always subject to a lengthier sentencing range and harsher prison conditions than if he had been adjudicated in juvenile court, defendant cites to nothing that can convert a purely procedural statute into a punitive one." *Patterson*, 2014 IL 115102, ¶ 104. It went on to state that "[t]he mere possibility that a defendant may receive a potentially harsher sentence if he is convicted in criminal court logically cannot change the underlying nature of a statute delineating the legislature's determination that criminal court is the most appropriate trial setting in his case." *Id.* ¶ 105.

¶ 23 Accordingly, we find that in the absence of actual punishment imposed by the exclusive jurisdiction statute, defendant's eighth amendment challenge cannot stand for the reasons stated above in *Patterson*. *Id.* ¶ 108. And because the Illinois proportionate penalties clause is coextensive with the eighth amendment's cruel and unusual punishment clause, we also reject defendant's challenge under the Illinois Constitution. *Id.*

¶ 24 Defendant nevertheless relies on *Miller*, *Graham*, and *Roper*, to support his constitutional challenge under the eighth amendment and our state's proportionate penalties clause. In *Roper*, the Supreme Court found that the death penalty was unconstitutional as applied to minors. *Roper*, 542 U.S. at 574-75. In *Graham*, the Supreme Court held that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." *Graham*, 560 U.S. at 82. And in *Miller*, the Supreme Court concluded that

"the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" convicted of homicide. *Miller*, 567 U.S. at ___, 132 S. Ct. at 2469. In each of these cases, the Supreme Court relied in part on the lesser moral culpability and greater rehabilitative potential of minors in support of its decisions.

¶ 25    The *Patterson* court found that although lengthy, that defendant's 36-year term was not comparable to either the death penalty or life in prison without parole. *Patterson*, 2014 IL 115102, ¶ 108. Our supreme court noted that the United States Supreme Court "has clearly distinguished the latter sentences from any others," noting that severity and irrevocability of the death penalty and life without parole. *Id*. Accordingly, because our supreme court and the United States Supreme Court have closely limited the application of the rationale in *Miller*, *Graham*, and *Roper*, invoking it only in the context of the most severe of all criminal penalties, we find that a term totaling 40 years for a juvenile who personally committed attempted murder does not fall into that category. As the court stated in *Patterson*, "[w]e decline defendant's invitation to extend the Supreme Court's eighth amendment rationale to the facts of this case." *Id.* ¶ 110.

¶ 26    We further note that our supreme court in *Patterson* "strongly urged" the General Assembly to review the automatic transfer provision based on the current scientific and sociological evidence indicating a need for the exercise of judicial discretion in determining the appropriate setting for the proceedings in juvenile cases. *Id.* ¶ 111. As we stated earlier, the exclusive jurisdiction provision at issue in this case was amended pursuant to Pub. Act 98-61 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120 (West 2012)), but the amendment applies only to offenses committed after the effective date of the amendment (January 1, 2014) and thus does not apply to defendant. This amendment, however, does not give us the authority to find the prior exclusive jurisdiction provision unconstitutional. Rather, we are bound by our supreme court's decisions and accompanying rationale, and until the Illinois or United States Supreme Court rules otherwise, we are compelled to follow the line of cases outlined above and conclude that the former exclusive jurisdiction provision was constitutional.

¶ 27    Defendant's next argument regarding the exclusive jurisdiction statute is that it violates both procedural and substantive due process. Defendant claims that "[p]ursuant to *Roper*, *Graham*, and *Miller*, 17-year-olds as a class are less culpable than adults because of their youth and its attendant characteristics, and courts may not automatically treat them as adults without first allowing them to show that such treatment would be inappropriate due to their youth." Our supreme court in *Patterson* also rejected a similar argument in the context of the automatic transfer statute. See *Patterson*, 2014 IL 115102, ¶¶ 93-95. In *Patterson*, the defendant attempted to support his due process claim "by relying on the Supreme Court's eighth amendment analysis in *Roper*, *Graham*, and *Miller*." *Id.* ¶ 97. Our supreme court found that "[a]lthough both the Supreme Court and defendant have emphasized the distinctive nature of juveniles, the applicable constitutional standards differ considerably between due process and eighth amendment analyses." *Id*. Accordingly, our supreme court rejected defendant's reliance on the Supreme Court's eighth amendment case law to support his procedural and substantive due process claims, and thus we are compelled to do the same here. *Id.*

¶ 28    Defendant's next argument deals with the application of the adult minimum sentences required for attempted murder of a peace officer with a firearm. Defendant states that because his sentence consisted of a 20-year minimum sentence for the underlying offense of attempted murder of a peace officer (720 ILCS 5/8-4(c)(1)(A), 9-1(b)(1) (West 2012)), and a mandatory

20-year enhancement for personally discharging a firearm during that offense (720 ILCS 5/8-4(c)(1)(C) (West 2012)), and because he must serve at least 85% of his sentence, he will not be eligible for release until October 7, 2046, when he will be 51 years old. Defendant argues that the "average age for *any* black man in the United States born in 1995 is only 65.2 years old" and thus his sentence "will certainly at least keep him imprisoned for *almost* all of his life." (Emphases in original.) Defendant argues that we should find his sentence unconstitutional either because (1) subjecting children to the same mandatory minimum penalties as adults violates the eighth amendment and the Illinois Constitution, (2) the specific automatic application of the adult firearm enhancement and the adult truth-in-sentencing statute is unconstitutional, or (3) the application of these adult sentencing statutes is unconstitutional as applied to defendant.

¶ 29    As stated above, a strong presumption exists that statutes are constitutional and courts will uphold a statute whenever reasonably possible. *Patterson*, 2014 IL 115102, ¶ 90. In addition, the challenging party has the burden of rebutting this presumption. *People v. Willis*, 2013 IL App (1st) 110233, ¶ 43. We review a statute's constitutionality *de novo*. *Patterson*, 2014 IL 115102, ¶ 90.

¶ 30    Defendant first contends, based on *Roper*, *Graham*, and *Miller*, that the imposition of the mandatory minimum sentence of 40 years, on defendant as a juvenile offender, fails to allow the trial court to have an opportunity to make an individualized determination and thus violates the eighth amendment as well as the proportionate penalties clause of the Illinois Constitution. We disagree. Unlike those cases, which involved the imposition of the death penalty (*Roper*) and a mandatory life sentence without the possibility of parole (*Graham* and *Miller*), without allowing the trial court any discretion in sentencing, in this case the trial court was able to consider defendant's age and culpability in sentencing defendant. It had the discretion to impose a sentence well over 40 years in prison. See 720 ILCS 5/8-4(c)(1)(A), 9-1(b)(1) (West 2012) (sentence for attempted murder of a peace officer performing his official duties carries a sentencing range of 20 to 80 years); 720 ILCS 5/8-4(c)(1)(C) (West 2012) (personal discharge of firearm during an attempted murder requires a 20-year sentencing enhancement). At sentencing, the trial court took into account defendant's age and other mitigating circumstances, such as defendant's lack of a criminal background and his tough upbringing, when it imposed the minimum sentence.

¶ 31    In *Miller*, the Supreme Court concluded that a mandatory life sentence without parole precluded consideration of the offender's age, background, and relative culpability and would likely result in a greater sentence than adults would serve. *Miller*, 567 U.S. at ___, 132 S. Ct. at 2475. The Court stated that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for a juvenile. *Id.* at ___, 132 S. Ct. at 2475. The Supreme Court has not held that a mandatory minimum sentence of 40 years violates the eighth amendment, and we decline to extend their holding in *Miller* to the circumstances of this case. See *People v. Banks*, 2015 IL App (1st) 130985, ¶ 20 (declining to extend holding in *Miller* to find that a mandatory minimum sentence of 45 years violates the eighth amendment in juvenile case). Because the proportionate penalties clause is coextensive with the cruel and unusual punishment clause, we find that for the same reason his eighth amendment challenge failed, defendant's proportionate penalties argument also fails. See *id.* ¶ 24.

¶ 32    Defendant's next argument, again relying on *Miller*, is that the application of the 20-year mandatory firearm enhancement and truth-in-sentencing provisions violates the eighth amendment and the proportionate penalties clause. We reject this argument for the same reasons stated above. See *id.* ¶¶ 20-24 (because the trial court had opportunity to use discretion in sentencing defendant, we decline to extend holding from *Miller* to the circumstances of this case). We note, however, that the legislature has added section 5-4.5-105 to the Unified Code of Corrections (Code). Pub. Acts 99-69, 99-258 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105 (West 2014)). This new statutory provision requires sentencing courts to consider "additional factors in mitigation" when sentencing persons that were under the age of 18 at the time they committed their offense and also permits a sentencing court to, "in its discretion," decline to impose otherwise mandatory firearm-related sentencing enhancements. *Id.* However, this new sentencing provision is only applicable to offense committed by juveniles after the effective date of January 1, 2016 (see below) and is therefore inapplicable here.

¶ 33    Defendant argues that even if the adult sentencing scheme for attempted murder of a peace officer with a firearm for a minor is not facially unconstitutional, it violates the proportionate penalties clause of the Illinois Constitution *as applied* to him. An "as applied" constitutional challenge requires defendant to show that the statute at issue violates the Illinois Constitution as applied to him. A challenge under the proportionate penalties clause "contends that the penalty in question was not determined according to the seriousness of the offense." *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005). A violation maybe be shown where the penalty imposed is " 'cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community.' " *Id.* (quoting *People v. Moss*, 206 Ill. 2d 503, 522 (2003)). Our supreme court has "never defined what kind of punishment constitutes 'cruel, 'degrading,' or 'so wholly disproportioned to the offense as to shock the moral sense of the community' " because "as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community." *People v. Miller*, 202 Ill. 2d 328, 338 (2002) (hereinafter *Leon Miller*). "To determine whether a penalty shocks the moral sense of the community, we must consider objective evidence as well as the community's changing standard of moral decency." *People v. Hernandez*, 382 Ill. App. 3d 726, 727 (2008).

¶ 34    In *Leon Miller*, the 15-year-old defendant was approached by two individuals who asked him to serve as a lookout. *Leon Miller*, 202 Ill. 2d at 330-31. The defendant agreed and one minute later, the individuals opened fire, killing two people. *Id.* The defendant was charged and convicted of two counts of first degree murder on an accountability theory, despite the fact that he never handled the guns used to commit the murders and ran away when the shots were fired. *Id.* After trial, the court refused to impose a life sentence under the multiple murder provision of the Code and instead imposed a 50-year sentence while finding the multiple murder provision unconstitutional as applied to the defendant. *Id.* at 335-36.

¶ 35    The Illinois Supreme Court agreed, explaining that because the automatic transfer statute mandated that all 15-year-olds charged with murder be tried in adult court, that the accountability statute effectively bars courts from considering the offender's degree of participation in the crime and that the sentencing statute precludes courts from considering a defendant's age or degree of participation in the crime, "a court never considers the actual facts of the crime, including the defendant's age at the time of the crime or his or her individual level of culpability." *Id.* at 340. Our supreme court noted that "a mandatory sentence of natural life in prison with no possibility of parole grossly distorts the factual realities of the case and does

not accurately represent defendant's personal culpability such that it shocks the moral sense of the community." *Id.* at 341.

¶ 36    In *People v. Gipson*, the juvenile defendant received a 52-year sentence for two counts of attempted first degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm in connection with the shooting of two people. This court found that while it was a serious offense, and one of the victims had been severely injured, "numerous factors diminish the justification for a 52-year prison term." *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 73. Specifically, this court found the defendant's youth and mental health issues should have been considered but that the sentencing scheme did not allow for it. *Id.* ¶ 75. This court noted that the trial court's "choice was to see that defendant remain in prison for life or spend only the last few years of his life outside the prison walls, all for a crime that he committed at age 15, while his mental health was questionable at best, when it could not be said that he was irredeemable, and for a crime in which no one died." *Id.* This court reversed and remanded to the trial court with instructions to conduct a retroactive fitness hearing. This court found that the defendant's 52-year sentence violated the proportionate penalties clause and therefore provided the trial court with the additional instruction that, in the event it found that defendant was fit to stand trial, he should be resentenced without applying the firearm enhancement. *Id.* ¶ 78.

¶ 37    Here, the juvenile defendant had no prior criminal history and was described by mitigation specialist Cariglio as full of potential and able to fully rehabilitate as a contributing member of society. The trial court noted that defendant was young, had no criminal history, and that his social history was "quite troubling." The trial court stated that "[t]he conversation about how much discretion judges should have in sentencing in criminal cases is active conversation," but that it was a conversation for another day. The trial court stated that it would sentence defendant with "what the legislature says I have to work with in this case" and that it was "mindful that I am going to be sentencing him to more years than his life is now" and that "it seems to be an unimaginable amount of time especially for a teenage child." While the crime was indeed serious, no one was injured in this particular instance. We find, relying on *Leon Miller* and *Gipson*, that the sentencing scheme at issue, as applied to defendant, violates the proportionate penalties clause of the Illinois Constitution, as it shocks our evolving standard of moral decency.

¶ 38    We believe that this decision is consistent with the evolving standards for juvenile offenders in this State as evidenced by recent changes that have been made in the way that juveniles are tried and sentenced. See Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105 (West 2014)); Pub. Act 99-258, § 5 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130, 5-805 (West 2014)). Now, when a person commits an offense and is under 18 years of age at the time of the offense, there are additional factors the trial court must consider in sentencing that offender, including age, impetuosity, and level of maturity, and the trial court "may, in its discretion, decline to impose any otherwise applicable sentencing enhancement based upon firearm possession." Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105(b) (West 2014)). In addition, section 5-130 of the Act now extends the jurisdiction of the juvenile court to all minors except those charged with first degree murder, aggravated criminal sexual assault, or aggravated battery with a firearm. See 705 ILCS 405/5-130 (West 2014). While these provisions do not apply retroactively, they are indicative of a changing moral compass in our society when it comes to trying and sentencing juveniles as adults. See *Leon Miller*, 202 Ill. 2d at 339 ("as our society evolves, so too do our concepts of elemental

- 9 -

decency and fairness which shape the 'moral sense' of the community"); *Hernandez*, 382 Ill. App. 3d at 727 ("To determine whether a penalty shocks the moral sense of the community, we must consider objective evidence as well as the community's changing standard of moral decency."). We therefore reverse defendant's sentence and remand for resentencing in line with the new sentencing scheme, without imposition of the mandatory enhancement. See *Gipson*, 2015 IL App (1st) 122451, ¶ 78 ("we direct the trial court to impose, on both attempted murder counts, any appropriate Class X sentence under the Unified Code, without regard to the mandatory enhancement").

¶ 39                                          Resentencing

¶ 40      After defendant filed his brief on appeal, he filed a supplemental brief arguing that certain statutory amendments that took effect while his appeal was pending should be applied retroactively to his case. Due to our reversal of defendant's sentence, we need not address this issue. However, we note that this court recently addressed this exact issue in *People v. Hunter*, 2016 IL App (1st) 141094, finding that the new sentencing scheme at issue for minors should not be applied retroactively.

¶ 41                                       One-Act, One-Crime

¶ 42      Defendant next contends, and the State agrees, that under one-act, one-crime principles we should vacate six of defendant's convictions for attempted murder and five of his convictions for aggravated unlawful use of a weapon. The one-act, one-crime doctrine provides that multiple convictions are improper where (1) only one physical act was manifested or (2) multiple acts were manifested but some of the convictions are of included offenses. *People v. King*, 66 Ill. 2d 551, 566 (1977). "Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act." *Id.* Our supreme court has "always held" that under the one-act, one-crime doctrine, the sentence should be imposed on the more serious offense and the less serious offense should be vacated. *People v. Lee*, 213 Ill. 2d 218, 226-27 (2004).

¶ 43      In the case at bar, defendant's most serious convictions for attempted murder were contained in counts VII and VIII of the indictment, which indicated that defendant had committed the attempted murders while personally discharging a firearm. 720 ILCS 5/8-4(c)(1)(C) (West 2012). Accordingly, we agree that defendant's convictions for attempted murder under counts I to VI should have been merged into counts VII and VIII and that counts I to VI should now be vacated. Additionally, defendant was convicted of six counts of AUUW. Defendant argues, and the State does not protest, that only one count of AUUW should remain—count XVIII, which alleged defendant possessed a firearm when he was not on his own land, abode, or fixed place of business, and had not been issued a valid FOID card.

¶ 44      Because we have the authority to directly order the circuit court to make the necessary corrections on a defendant's sentencing order, we order the mittimus to be modified in accordance with the above findings.

¶ 45                                         CONCLUSION

¶ 46      For the foregoing reasons, we affirm the judgment in part, reverse the sentence of the circuit court of Cook County, remand for resentencing in accordance with this opinion, and

order the mittimus corrected.

¶ 47 Judgment affirmed in part; sentence reversed and remanded with directions; mittimus corrected.