2021 IL App (1st) 200453-U

THIRD DIVISION
September 29, 2021

No. 1-20-0453

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 14137 (02) |
| | ) | |
| DARNELL CHAFFIN, | ) | Honorable |
| | ) | Neera Walsh, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and Burke concurred in the judgment.

**ORDER**

¶ 1   *Held*: Second-stage dismissal of defendant's untimely post-conviction petition was proper where defendant failed to show that the delay in filing was not due to his culpable negligence, and where he failed to make a substantial showing of a constitutional violation.

¶ 2   Defendant, Darnell Chaffin, was convicted of armed robbery with a firearm after a jury trial, and was sentenced to 21 years' imprisonment. In this appeal, defendant challenges the denial of his post-conviction petition at the second stage of proceedings.

¶ 3   The evidence elicited at defendant's trial was set out in the Rule 23 order entered on defendant's direct appeal (*People v. Chaffin*, 2016 IL App (1st) 143962-U), and we will summarize

that evidence below. Specifically, the record shows that defendant was arrested on July 20, 2010, in connection with the armed robbery of Tedmund Gordon earlier that afternoon on South Kostner Avenue in Chicago. Several attorneys entered appearances on defendant's behalf throughout the pre-trial proceedings, however defendant ultimately elected to represent himself during the jury trial.

¶ 4    At trial, the victim, Tedmund Gordon, testified that at approximately 2:30 p.m. on July 20, 2010, he was approached by two men, one white and the other black, near Gladys and Kostner Avenues in Chicago. Velasquez testified that the white man, later identified as Jovani Velasquez, pointed a gun at Gordon's chest and said, "Give me your money," while the black man stood approximately three feet behind Gordon. The men robbed Gordon of $840 in cash, before running away in the same direction. During his testimony, Gordon identified the firearm that was used in the armed robbery. When questioned by defendant on cross-examination, Gordon testified that defendant, who is black, was not the black man who participated in the robbery.

¶ 5    Several police officers testified regarding the investigation into the offense. Their testimony established that a Trailblazer matching the description of a vehicle connected to a reported robbery on Kostner was stopped on Lake Street. Officers identified defendant as the front passenger and co-defendant, Jovani Velasquez, as the rear driver side passenger. Police recovered a loaded .38 caliber firearm from the Trailblazer and over $700 from defendant's shoe. The officers also testified that Gordon arrived at the scene of the traffic stop and spontaneously pointed to defendant and Velasquez and identified them as the perpetrators. Later that day, Gordon identified photographs of defendant and Velasquez as his assailants.

¶ 6    In the defense case-in-chief, defendant called Velasquez, who testified that he pleaded guilty to armed robbery arising from this incident, but Velasquez denied that defendant was

involved. Velasquez claimed that he committed the robbery with two other individuals who were found in the Trailblazer and that defendant was not with them when they were stopped.

¶ 7 Defendant testified that he "did not take any part in this robbery." He claimed that he was "snatched off the street by the police officers" and arrested after exiting the L train on his way to a barber shop. Defendant testified that he knew Velasquez in high school, but denied that they were friends.

¶ 8 In rebuttal, the State called an Assistant State's Attorney who testified that during Velasquez's plea hearing, she asked Velasquez several questions regarding the facts of the offense while he was under oath. Velasquez identified a photograph of defendant and confirmed that defendant committed the robbery with him and was in the Trailblazer when it was stopped by police.

¶ 9 Based on the above evidence, defendant was found guilty by a jury of armed robbery with a firearm. Defendant was sentenced to six years for armed robbery, plus a mandatory 15-year firearm enhancement, for a total aggregate sentence of 21 years' imprisonment.

¶ 10 On direct appeal, this court rejected several claims raised by defendant, including, among others, that the State failed to prove him guilty beyond a reasonable doubt, and that the State erred in making comments in closing arguments that suggested that Gordon's failure to identify defendant at trial was the result of intimidation. Regarding the latter argument, this court explained that, in examining the prosecutor's argument that Gordon may have been intimidated to testify, "intimidate" would be considered, not "in the criminal sense, but in its commonly understood meaning," specifically, " 'to make timid or fearful.' " *Chaffin*, 2016 IL App (1st) 143962-U, ¶ 56, quoting *Merriam–Webster's Collegiate Dictionary* 613 (10th ed.1995). We found no error in the prosecutor's arguments, concluding that it was reasonable to argue that Gordon might be timid or

fearful when confronted and questioned directly by defendant, who, as stated above, represented himself at trial.

¶ 11    On July 25, 2019, defendant filed a post-conviction petition, arguing that: 1) because he was 17 years old at the time of the offense, the mandatory imposition of the 15-year enhancement violated the Eighth Amendment and the Proportionate Penalties Clause of the Illinois Constitution; 2) he was denied due process because the State suppressed exculpatory evidence from Gordon; and 3) the State made a false inference that Gordon had been intimidated by defendant or his family. Defendant included an affidavit from Gordon, signed and notarized February 18, 2019, in which Gordon averred that he told prosecutors that he was not contacted by defendant or his family prior to trial and that defendant was not the man who robbed him.

¶ 12    On September 11, 2019, the State filed a motion to dismiss defendant's post-conviction petition, arguing that: 1) defendant's filing was untimely where it was due in August 2018, six months after the denial of his writ of certiorari, but it was not filed until July 2019; 2) defendant's petition was invalid because he failed to attach a verification affidavit; 3) *res judicata* barred defendant's claim about the State's inferences regarding Gordon; 4) defendant failed to present an as-applied proportionate penalties analysis regarding his challenge to his sentence; and 5) defendant failed to demonstrate a due process or a *Brady* violation.

¶ 13    Defendant filed an amended petition for post-conviction relief on November 21, 2019, which included a verification page and a transcript of the sentencing hearing. In the amended petition, defendant focused his challenge on two specific arguments: that the 15-year firearm enhancement violated the eighth amendment and proportionate penalties clause of the Illinois Constitution because he was a juvenile at the time of the offense; and that the State withheld

4

evidence that Gordon told prosecutors neither defendant nor his family had contacted him, despite arguing for an inference that Gordon had been intimidated.

¶ 14 On November 25, 2019, the State filed a motion to dismiss defendant's amended petition, generally re-alleging the same arguments made in their initial motion to dismiss, as well as arguing that defendant's sentencing argument was barred by forfeiture because he could have raised it on direct appeal.

¶ 15 On January 6, 2020, defendant filed a response to the motion to dismiss. Defendant acknowledged the untimeliness of his petition, but argued that he showed an absence of culpable negligence because *People v. Barnes*, 2018 IL App (5th) 140278 and *People v. Aikens*, 2016 IL App (1st) 133578, established a "new rule" that "must be applied retroactively," specifically, that a mandatory firearm enhancement violated the Illinois constitution, and could not be "automatically applied to a juvenile offender." Regarding his *Brady* claim, defendant argued that he also established a lack of culpable negligence because he was not aware of Gordon's interactions with police until Gordon signed his affidavit in February 2019.

¶ 16 On January 8, 2020, the court granted the State's motion to dismiss and entered an order dismissing defendant's post-conviction petition. The court held that defendant's post-conviction petition was untimely because the time limit for filing a petition expired August 20, 2018, yet defendant did not file his petition until July of 2019. Further, the court found that defendant had not shown that the delay in filing was not due to his culpable negligence, concluding that defendant could have asserted an as-applied constitutional claim in his direct appeal or in a timely filed post-conviction petition, particularly because *Aikens*, 2016 IL App (1st) 133578, on which defendant relied, was decided two years before defendant's petition was due.

¶ 17    The court further concluded that defendant's claim regarding the firearm enhancement was forfeited since petitioner could have raised the claim in his direct appeal. The court rejected defendant's claim that *Barnes* created a "new substantive rule that applies retroactively," explaining that no Illinois court has held that firearm enhancements are unconstitutional as applied to all juveniles, but rather the courts have considered whether enhancements were disproportionate as applied to the individuals in those particular cases. The court noted that defendant had not argued that the firearm enhancement was unconstitutional as applied to his specific circumstances, instead claiming that, because he was a juvenile at the time of the offense, the statute was unconstitutional.

¶ 18    Regarding defendant's *Brady* claim, the court also found that defendant had also not shown a lack of culpable negligence to excuse the untimely filing. Although Gordon's affidavit was not signed until February of 2019, there was nothing in the petition to indicate why an affidavit from Gordon could not have been obtained sooner. As to the merits, the court explained that defendant's claim was not focused on Gordon's statement to prosecutors that defendant was not "involved" in the crime since Gordon testified to that at trial. Rather, the focus was on Gordon's denial that he had been contacted by defendant or his family and that petitioner failed to make a substantial showing that non-disclosure of this was violative of *Brady*. Specifically, the court stated that "Gordon's statement that he had not been contacted or threatened simply is not material to [defendant]'s guilt." The statement did not exculpate defendant of the armed robbery, but rather "related to the conflict between Gordon's nonidentification of [defendant] at trial with his prior identifications of [defendant] as one of his assailants on the day of the robbery." The court pointed out, however, that on appeal, this court explained that "the State never suggested Gordon had been physically intimidated." Instead, this court concluded that it was reasonable for the prosecutor to

argue that Gordon might be timid or fearful when confronted directly by defendant, the alleged person who participated in the armed robbery, and "[n]othing contained in Gordon's affidavit contradict[ed] that argument."

¶ 19 The court additionally concluded that there was "no reasonable probability that [defendant] would have been acquitted had this been disclosed." The jury was already asked "to resolve this conflict" where there was evidence at trial that Gordon had identified defendant on the day of the robbery but denied that defendant was the perpetrator during his trial testimony. Accordingly, the court concluded that defendant had "not made a substantial showing of a constitutional violation on this claim."

¶ 20 The court granted the State's motion to dismiss the petition. Defendant filed a timely notice of appeal, and in this court, defendant contends that the court erred in dismissing his petition.

¶ 21 The Illinois Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 through 122-8 (West 2018)) provides a three-step procedural mechanism by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. 725 ILCS 5/122-1(a) (West 2018); *People v. Harris,* 224 Ill. 2d 115, 124 (2007); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Postconviction relief is limited to constitutional deprivations that occurred at the original trial. *Id.* at 380. A post-conviction proceeding is not a direct appeal, but rather a collateral attack on judgment of conviction. *People v. Evans*, 186 Ill. 2d 83, 89 (1999); *People v. Hawkins¸* 181 Ill. 2d 41, 50 (1998). The scope of the proceeding is limited to constitutional matters that have not been, and could not have been, previously adjudicated and is limited by the doctrines of procedural default and *res judicata*. *People v. Jones*, 211 Ill. 2d 140, 144 (2004). Issues that were decided on

direct appeal are barred by the doctrine of *res judicata*, and issues that could have been raised on direct appeal, but were not, are deemed waived. *People v. Johnson*, 191 Ill. 2d 257, 268 (2000).

¶ 22    Under the Act, a defendant bears the burden of establishing that a substantial deprivation of his constitutional rights occurred. *People v. Waldrop,* 353 Ill. App. 3d 244, 249 (2004). At the first stage, a postconviction petition may be summarily dismissed if the claims in the petition are frivolous and patently without merit. *People v. Hodges,* 234 Ill. 2d 1, 10 (2009); see 725 ILCS 5/122–2.1(a)(2) (West 2018). However, if the petition survives initial review, the process moves to the second stage, during which the State may file a motion to dismiss or an answer to the postconviction petition. 725 ILCS 5/122–5 (West 2018). Taking all well-pleaded facts as true at the second stage, (*People v. Wheeler,* 392 Ill. App. 3d 303, 308 (2009)), the circuit court determines whether the petition and any accompanying documentation make a substantial showing of a constitutional violation (*People v. Edwards,* 197 Ill. 2d 239, 246 (2001)). Because the post-conviction court in this case dismissed defendant's petition at the second stage, we review that dismissal *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 23    Pursuant to 725 ILCS 5/1221(c) (2018), "[n]o proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal *** or 3 years from the date of conviction, whichever is sooner ***." Accordingly, defendant was required to file his petition by August 20, 2018, six months from February 20, 2018, the date his petition for a *writ of certiorari* was denied. See *People v. Johnson*, 2017 IL 120310, ¶ 24. Defendant, however, did not file his *pro se* petition until July 25, 2019, more than 11 months later.

¶ 24    Defendant does not dispute that he failed to comply with the statute of limitations, instead arguing that the court erred in finding that the delay was not due to his own culpable negligence. "It is well settled that all citizens are charged with knowledge of the law." *People v. Lander*, 215

Ill. 2d 577, 603 (2005). Further, "[i]gnorance of the law or legal rights will not excuse a delay in filing a lawsuit." *Id.;* see also *Johnson*, 2017 IL 120310, ¶ 27 (the defendant's "lack of legal knowledge as to postconviction matters was insufficient, since ignorance of the law or of one's legal rights does not provide an excuse for his late filing."). To overcome the procedural bar of untimeliness, the Act allows a petitioner to file an untimely post-conviction petition if the petitioner "alleges facts showing that the delay was not due to his or her culpable negligence." See *Id.*, ¶ 26.

¶ 25    "Culpable negligence has been defined as '[n]egligent conduct that, while not intentional, involves a disregard of the consequences likely to result from one's actions.' " *People v. Boclair*, 202 Ill. 2d 89, 106 (2002) (quoting Black's Law Dictionary 1056 (7th ed. 1999)); see also *Lander*, 215 Ill. 2d at 586-87. The term "culpable negligence" connotes "something greater than ordinary negligence and is akin to recklessness." *People v. Rissley*, 206 Ill. 2d 403, 420 (2003); *People v. Molina*, 379 Ill. App. 3d 91, 96 (2008). A defendant asserting a lack of culpable negligence, "must support his assertion with allegations of specific fact showing why his tardiness should be excused." *People v. Hobson*, 386 Ill. App. 3d 221, 233 (2008). As it is a defendant's obligation to know the time requirement under the Act, an "unfamiliarity with those requirements does not demonstrate a lack of culpable negligence." *People v. Johnson*, 2015 IL App (2d) 131029, ¶ 27. Similarly, "[i]gnorance of the law or legal rights will not excuse a delay in filing a lawsuit." *Lander*, 215 Ill. 2d at 588.  It is "very difficult" to show a lack of culpable negligence (*People v. Turner*, 337 Ill. App. 3d 80, 86 (2003)), and a "defendant bears a heavy burden to affirmatively show why the exception to the statute of limitations applies to his case" (*People v. Gunartt*, 327 Ill. App. 3d 550, 552 (2002)). "A trial court's findings of fact regarding whether a petition's untimeliness was due to culpable negligence will not be reversed unless manifestly erroneous, but

the trial court's ultimate decision as to whether the established facts demonstrate culpable negligence is reviewed *de novo*." *People v. Flowers*, 2015 IL App (1st) 1113259, ¶ 45 (quotations and citations omitted).

¶ 26    In this case, defendant argued that he was not culpably negligent in presenting his constitutional challenge to the mandatory firearm enhancement because it was based, at least in part, on *Barnes*, 2018 IL App (5th) 140378, which was decided after his postconviction petition was due. Defendant contends that *Barnes* "mandates an individualized assessment of whether a juvenile offender's conduct supported the application of the firearms enhancement" and "created a new substantive rule which applies retroactively to cases upon collateral review."

¶ 27    *Barnes*, however, did not establish any new constitutional principles, but rather relied on existing constitutional principles to determine that the "trial court's imposition of the mandatory 15-year firearm enhancement, *as applied to* [*that*] *defendant*, violate[d] the proportionate penalties clause of the Illinois Constitution, as it shocks our evolving standard of moral decency." *Id.*, ¶ 29 (emphasis added). The *Barnes* opinion relied expressly on *Aikens*, 2016 IL App (1st) 133578, in which the juvenile defendant also successfully brought an as-applied challenge to the firearm enhancement. *Aikens* was decided on September 12, 2016—nearly two years before the limitations period expired for defendant to bring a postconviction petition.

¶ 28    Moreover, even without the *Aikens* or *Barnes* decisions, nothing prevented defendant from raising an as applied constitutional claim in his direct appeal or in a timely post-conviction petition. The rationale underlying *Aikens* and *Barnes* is rooted in long-standing decisions of the U.S. Supreme Court regarding juvenile sentencing (see *Miller v. Alabama*, 567 U.S. 460 (2012)), *Graham v. Florida*, 560 U.S. 48 (2010), and *Roper v. Simmons*, 543 U.S. 551 (2005)), and

defendant could have chosen to raise a similar claim on direct appeal or in a timely postconviction petition, had he chosen to do so.

¶ 29     The fact that there is now one additional case, namely *Barnes*, that may provide additional authority for defendant's desired claim, does not alter our conclusion that defendant could have timely brought his constitutional challenge. As our supreme court has explained in similar circumstances, "[w]hile defendant is correct that his argument had less support in the law at the time of his direct appeal than it has today, the argument was available to him at the time of his direct appeal." *People v. English*, 2013 IL 112890, ¶ 31. Like here, the supreme court also pointed out that other defendants "faced the same legal landscape as defendant" and made similar arguments on direct appeal which "demonstrate[d] that the theory on which defendant relies is not novel." *Id*. Contrary to defendant's arguments on appeal, the claim defendant raises, that the mandatory 15-year firearm sentencing enhancement is unconstitutional as applied to him, is not a new or novel theory that was only first advanced in *Barnes*. Rather, *Aikens* addressed the very same argument and concluded that the firearm enhancement was constitutionally disproportionate as applied to the juvenile defendant in that case. As the supreme court stated, if the defendant in *Aikens* "was able to raise the issue under such circumstances, defendant also could have done so." *Id*.

¶ 30     Additionally, contrary to petitioner's characterization, the *Barnes* decision did not "create[] a new substantive rule which applies retroactively to cases upon collateral review." *Barnes* simply held that, as applied to the defendant in that case, the mandatory firearm enhancement was unconstitutional, an argument that had been raised and decided before in *Aikens*, and a concept that was not in any way new or novel. *Barnes* did not establish a rule of law applicable to all

11

similarly situated defendants, but rather that case was decided only as applied to that defendant in particular.

¶ 31 Moreover, "[w]hile it is true that an intervening change in the law can establish cause in considering whether to relax the bar of *res judicata*, that rule applies only when the intervening change in the law comes from the legislature or a higher court." *People v. Nichols*, 2021 IL App (2d) 190659, ¶ 22 (internal citations omitted). Here, the case that defendant contends represents an intervening change in the law—*Barnes*, 2018 IL App (5th) 140378—is from another Illinois appellate district. Appellate court opinions are not binding on other branches of the appellate court, and a court is not bound to follow a decision of an equal or inferior court. *Gillen v. State Farm Mutual Automobile Insurance Co.,* 215 Ill.2d 381, 393 n. 2 (2005). Accordingly, *Barnes* could not have possibly created a new rule that applied to defendant's case. In these circumstances, the circuit court properly found that defendant had not shown a lack of culpable negligence to excuse the untimely filing of his postconviction petition.

¶ 32 Additionally, even if we were to reach the merits of defendant's constitutional claim, we note that the cases on which defendant relies, *Aikens* and *Barnes*, have been seriously questioned. See *Nichols*, 2021 IL App (2d) 190659, ¶ 25; *People v. Woods*, 2020 IL App (1st) 163031, ¶¶ 61-63. *Aikens* and *Barnes* relied on underlying authorities regarding juvenile sentencing, specifically *Miller*, 567 U.S. 460, *Graham*, 560 U.S. 48, and *Roper*, 543 U.S. 551. Defendant relies on the same authorities in this appeal, continuing to contend that his claim should be "judged in the light of the burgeoning case law regarding the imposition of life sentences and *de facto* life sentences for juveniles." However, in *People v. Buffer*, 2019 IL 122327, ¶ 27, our supreme court reaffirmed that, "to prevail on a claim based on *Miller* and its progeny, a defendant sentenced for an offense committed while a juvenile must show that *** the defendant was subject to a *life sentence*,

mandatory or discretionary, natural or *de facto.*" (Emphasis added.) Accordingly, defendant's claim appears to have been foreclosed by the supreme court as defendant unquestionably did not receive a life sentence or *de facto* life sentence.

¶ 33    We next review defendant's claim that the court erred in dismissing his claim that the State violated *Brady v. Maryland,* 373 U.S. 83 (1963), in failing to disclose certain information about the prosecutor's interview with Gordon. Under *Brady*, the State has an affirmative duty to disclose favorable evidence to a criminal defendant. To establish a *Brady* violation, a defendant must show, in pertinent part, that (1) the undisclosed evidence is favorable to the accused; (2) the evidence was suppressed by the State; and (3) the accused was prejudiced because the evidence is material to guilt. *People v. Green,* 2012 IL App (4th) 101034, 39.

¶ 34    The standard for materiality resembles the prejudice standard applied in ineffective assistance of counsel cases. *People v. Morales*, 2019 IL App (1st) 160225, ¶ 36. Evidence is material if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed. *People v. Beaman*, 229 Ill. 2d 56, 74 (2008). A defendant can show he was deprived of his due process rights under *Brady* if he can show that the "favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles w. Whitley*, 514 U.S. 419, 435 (1995).

¶ 35    Initially, we also find that the court correctly found that defendant had not shown a lack of culpable negligence in failing to bring the claim sooner. Defendant asserts only that he "was not aware of Tedmund Gordon's interactions with the prosecution until Gordon signed an affidavit in February of 2019" and that defendant "had no access to Gordon and no ability to make him come forward until he chose to do so." Gordon, however, testified at defendant's trial, and neither

Gordon's affidavit nor defendant's petition offer any specific facts to indicate why an affidavit could not have been obtained from Gordon within the limitations period.

¶ 36    Also importantly, defendant has not made a substantial showing of a constitutional violation based on an alleged *Brady* violation, even taking all well-pleaded facts in Gordon's affidavit as true, as we must at the second stage. The gist of Gordon's affidavit is that he informed prosecutors of two things: 1) that defendant was not one of the perpetrators, and 2) that neither defendant nor his family had contacted him prior to trial. The first statement cannot be the basis for a *Brady* claim, as Gordon testified to that effect at trial, and the record indicates that defendant was aware that Gordon had given conflicting statements about whether defendant was one of the perpetrators. At one pretrial hearing, defendant informed the court that the State "got statements from the victim that said I didn't *** rob him," later adding that he did not "understand why [he] wasn't exonerated from this case, your Honor. The victim ha[s] conflicting statements."

¶ 37    As a result, the only statement at issue is that Gordon told prosecutors that he had not been contacted by defendant or his family. Defendant contends that this statement should have been disclosed because the State, in questioning Gordon and closing argument, implied that Gordon had been intimidated. As this court explained on direct appeal, it was "reasonable for the prosecutor to argue that Gordon might be timid or fearful" when being questioned directly by defendant, "the alleged person who participated in the armed robbery." *Chaffin,* 2016 IL App (1st) 143962, ¶ 60. Gordon's statement to prosecutors that he was not actually contacted or threatened by defendant or his family does nothing to contradict that argument.

¶ 38    Moreover, there is no reasonable probability that defendant would have been acquitted had this been disclosed. The evidence at trial showed that Gordon had identified defendant on the day of the robbery, but did not identify him as the perpetrator on the stand. This conflicting evidence

was explored at the jury trial, and the jury resolved the conflict against defendant. As we previously concluded, the evidence in this case was not closely balanced. *Id.*, ¶ 62. Even taking Gordon's affidavit as true, there is no reasonable probability that the result of the proceeding would have been different had it been disclosed. *Beaman*, 229 Ill. 2d at 74; *Harris*, 206 Ill. 2d at 311; *Strickler v. Greene,* 527 U.S. 263, 281 (1999) ("[S]trictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."). Accordingly, we conclude that defendant has not made a substantial showing of a *Brady* violation, and the circuit court properly dismissed defendant's petition at the second stage of postconviction proceedings.

¶ 39    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 40    Affirmed.