2021 IL App (1st) 180117-U

FIRST DISTRICT
FIRST DIVISION
March 15, 2021

No. 1-18-0117

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 16 CR 6302 |
| | ) | |
| TIMOTHY TOLBERT, | ) | The Honorable |
| | ) | Joan Margaret O'Brien, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justice Pierce concurred in the judgment.
Presiding Justice Walker dissented.

**ORDER**

¶ 1 *Held*: Defendant received conflict-free representation during post-trial proceedings and his sentence was not grossly disproportionate to the severity of his offenses.

¶ 2 Following a bench trial, defendant Timothy Tolbert was convicted of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2016)), two counts of unlawful use or possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2016)), and four counts of aggravated unlawful use of a weapon (720 ILCS 24-1.6(a)(1)/(3)(A-5) (West 2016)). The trial court sentenced defendant to 8.5 years' imprisonment on the armed habitual criminal conviction and 6 years'

imprisonment on the remaining convictions to be served concurrently to the armed habitual criminal sentence. On appeal, defendant argues that (1) his post-trial counsel operated under an actual conflict of interest and (2) the armed habitual criminal statute as applied to him violated the eighth amendment of the United States Constitution (U.S. Const., amend. VIII). We affirm.

¶ 3                                          BACKGROUND

¶ 4         Defendant retained Stuart Goldberg (Goldberg) as private defense counsel. Goldberg filed a pre-trial motion to quash arrest and suppress evidence, arguing that defendant's warrantless arrest was made without probable cause, but withdrew that motion on the day of trial.

¶ 5         Chicago police officer Jonathan McCabe (McCabe) was the only witness who testified at trial. On March 5, 2016, at around 6:30 p.m., McCabe and his partner Officer Casillas[1] responded to a dispatch call of "[a] person with a gun" near the area of 34 East 100th Place in Chicago. The officers, who were in plain clothes and an unmarked vehicle, used "a vehicle in front of [them] as cover in an attempt for a stealth entrance."

¶ 6         From about 75 to 100 feet away, McCabe observed defendant, whom he identified in court, walking alone with "a large object protruding from his waistband," which he believed to be a firearm. McCabe did not lose sight of defendant as he was closing in on him. From about 15 feet away, McCabe observed defendant "with an extended magazine." McCabe's view of the firearm in defendant's waistband was unobstructed.

¶ 7         McCabe exited the vehicle, announced his office, and ordered defendant "to stop and put his hands up." Defendant failed to comply and ran in the opposite direction. McCabe chased defendant on foot while his partner followed in the police vehicle.

_____

[1] No first name was given for Officer Casillas.

¶ 8    When he "reached the gangway of 10015 South State, [McCabe] saw a metallic object fall from the defendant's person and hit the concrete and make a noise." No one else was around. Within five seconds, McCabe recovered the "metallic object," which was a Ruger P-95 semi-automatic handgun with an extended magazine loaded with 28 live rounds.

¶ 9    After recovering the firearm, McCabe lost sight of defendant for about 10 seconds. He continued his pursuit and found the defendant "hiding behind a pillar on a porch of a residence." McCabe ordered him "to come down off the stairs and come towards [him]." Defendant initially complied, walking towards the front door of the residence saying, "that he didn't have anything to do with this." McCabe told him to put his hands in the air and continue walking toward him. At that point, the front door of the residence opened and another individual came out. McCabe ordered both men to stop, but they both ran inside the residence. McCabe kicked in the front door and searched for defendant but could not find him anywhere in the residence. Within three minutes, McCabe learned that his partner had placed defendant in custody.

¶ 10    The parties stipulated that defendant did not have a valid firearm owner's identification (FOID) card or a concealed carry license on the day of arrest. Certified copies of defendant's two prior convictions for residential burglary were entered into evidence without objection from the defense.[2] Defendant moved for a directed finding, which the trial court denied.

¶ 11    The trial court found defendant guilty of being an armed habitual criminal, two counts of unlawful use or possession of a weapon by a felon, and four counts of aggravated unlawful use of a weapon.

¶ 12    Defense counsel Goldberg filed a motion for a new trial, arguing, in part, that the State failed to prove defendant guilty beyond a reasonable doubt. While the post-trial motion was

---

[2] On December 29, 2014, defendant pled guilty to two separate residential burglary charges.

pending, Goldberg experienced health issues and was unable to appear in court. On July 17, 2017, Mathew Kaplan (Kaplan) advised the court, in defendant's presence, that defendant had "indicated to [Kaplan] that he [wished] for [him] to represent him in addition to Mr. Goldberg *** due to [Goldberg's] medical condition." Kaplan was previously employed as Goldberg's law clerk and had been present for part of defendant's trial.[3] After obtaining the trial transcripts, Kaplan filed an amended motion for a new trial. On December 11, 2017, during the hearing on the motion, Kaplan argued that the pretrial motion to quash arrest and suppress evidence was "prematurely withdrawn" and that the parties erred in stipulating to defendant's lack of a FOID card. No ineffective assistance of counsel claims were raised in the post-trial motion. After the trial court denied the amended motion, the parties proceeded to a sentencing hearing.

¶ 13 Although the trial judge "was leaning towards 10 years," she ultimately sentenced defendant to 8.5 year in prison on the armed habitual criminal conviction (to be served at 85%) and six years in prison on the remaining convictions to be served concurrently to the armed habitual criminal sentence.

¶ 14 ANALYSIS

¶ 15 Defendant first argues that post-trial counsel failed to raise an ineffective assistance of counsel claim against trial counsel because he was laboring under an actual conflict of interest.

¶ 16 A criminal defendant's sixth amendment right to effective assistance of counsel includes the right to conflict-free representation, which means " 'assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations.' " *People v. Green*, 2020 IL 125005, ¶ 20 (quoting *People v. Spreitzer*, 123 Ill. 2d 1, 13-14 (1988)). A defendant

---

[3] On November 14, 2017, Kaplan was sworn in as a licensed attorney. He filed his appearance on defendant's behalf on December 4, 2017.

asserting that counsel operated under an actual conflict of interest "need not prove prejudice in that the conflict contributed to the conviction, but it is necessary to establish that an actual conflict of interest adversely affected the lawyer's performance." *People v. Austin M.*, 2012 IL 111194, ¶ 82. A defendant must identify "some specific defect in his counsel's strategy, tactics, or decisionmaking attributable to the alleged conflict of interest." *Id.* We review conflict of interest claims *de novo*. *People v. Hardin*, 217 Ill. 2d 289, 299 (2005).

¶ 17    In this case, defendant failed to identify any "defect in his counsel's strategy, tactics, or decisionmaking attributable to the alleged conflict of interest." *Austin M.*, 2012 IL 111194, ¶ 82. Defendant claims that due to a conflict of interest, Kaplan failed to bring an ineffective assistance of counsel claim against Goldberg (his uncle, former employer and current co-counsel) for prematurely withdrawing the motion to quash arrest and suppress evidence and improperly stipulating to defendant's lack of a valid FOID card. At the hearing, Kaplan asserted that "the defense feels that the motion *** was prematurely withdrawn prior to trial *** under the case of *People v. Martell Horton*," arguing "that the Court found that an individual standing on a porch, even with a metallic object protruding from his waistband, who subsequently enters a home does not satisfy grounds for a violation of kicking in a door and making forced entry into a home." However, in this case, unlike in *Horton*, defendant abandoned the firearm. *Horton*, 2017 IL App (1st) 142019, ¶¶ 10, 50, *vacated*, No. 122461 (Nov. 22, 2017).[4] Kaplan also argued that the stipulation was invalid "due to the case of *People v. Diggins*, that an individual cannot sign as affiant of a document stating that [someone had] a FOID card or a concealed carry license because that document amounts to testimonial hearsay." This argument is completely irrelevant to the

---

[4] While defendant's motion for a new trial was pending, *Horton* was vacated for reconsideration pursuant to a supervisory order entered by the Illinois Supreme Court. See *Horton*, 2019 IL App (1st) 142019-B, ¶ 2.

instant case where defendant stipulated to the lack of a FOID card. *People v. Cox*, 2017 IL App (1st) 151536, ¶ 88. Neither of these arguments establish that trial counsel erred. Moreover, both arguments were rejected by the trial court as being without merit.[5] Because there was no error for Kaplan to base any ineffective assistance of counsel claim upon, defendant cannot establish a conflict of interest that "adversely affected [his] lawyer's performance." *Austin M.*, 2012 IL 111194, ¶ 82.

¶ 18    In addition, the trial court was not required to *sua sponte* investigate the possibility of a conflict between defendant's attorneys without first being advised of a potential conflict. *Hardin*, 217 Ill. 2d at 302; *People v. Morales*, 209 Ill. 2d 340, 348 (2004); see *Spreitzer*, 123 Ill. 2d at 17 (if a trial court was not apprised of a potential conflict of interest, then a conviction will be reversed only if an actual conflict of interest is established). Here, defendant never complained to the court about Goldberg or Kaplan's representation.[6] See *Spreitzer*, 123 Ill. 2d at 17 (convictions reversed in certain *per se* conflict of interest cases "unless the record reflects that the defendant has been made aware of the conflict and has knowingly waived his right to conflict-free counsel"). Where, as here, the court was not advised "of the actuality or possibility" of any conflict of interest (see *Holloway v. Arkansas*, 435 U.S. 475, 483 (1978)), the court had no duty "to conduct an inquiry to determine the necessity of appointing alternate counsel" (*People v. Vaughn*, 200 Ill. App. 3d 765, 769 (1990)).

---

[5] In denying the motion for a new trial, the trial court specifically explained that "in terms of the motion being withdrawn, in addition to the fact that there was no evidence that a gun was recovered in a house, the testimony was that the defendant dropped the gun, which would make the likelihood of a motion succeeding being slim since he abandoned it" and that no legal authority supported the claim that "you cannot have convictions being entered on the same date" for purposes of the armed habitual criminal statute.

[6] Kaplan explained to the trial court that "I have spoken with my client and have talked to him about that at the inception of our relationship I was employed in the capacity as a law clerk; however, presently before the Court I am a fully licensed and accredited attorney. I have spoken with the defendant, and he has indicted to me that he wishes for me to represent him in addition to Mr. Goldberg in Mr. Goldberg's absence due to his medical condition."

¶ 19        Defendant also claims that "the sentencing scheme for the crime of armed habitual criminal (AHC) was unconstitutionally applied to him in violation of the eighth amendment" because his sentence was disproportionate to the nonviolent nature of the crimes that he committed.

¶ 20        The State asserts that defendant's claim is procedurally defaulted because no evidentiary hearing on the issue was held in the trial court. An as-applied constitutional challenge "requires a showing that the statute is unconstitutional as it applies to the specific facts and circumstances of the challenging party." *People v. Harris*, 2018 IL 121932, ¶ 38. Generally, an evidentiary hearing is required for an as-applied constitutional challenge, but an exception is made where "the record has been developed sufficiently for appellate review." *People v. Martin*, 2018 IL App (1st) 152249, ¶ 12. Here, defendant argues that "the gravity of his offense - nonviolent possession of a weapon causing no harm – is minor when compared to the harshness of the penalty." The record includes the facts surrounding defendant's possession of the firearm and the State did not identify any additional facts needed to be adduced at an evidentiary hearing to address his claim. *Id.* at ¶ 13. Therefore, defendant's as-applied constitutional challenge to the armed habitual criminal statute is reviewable on appeal. *Id.* We review an as-applied constitutional challenge *de novo*. *People v. Johnson*, 2018 IL App (1st) 140725, ¶ 97.

¶ 21        The eighth amendment to the United States Constitution prohibits the imposition of "cruel and unusual punishments" and " 'guarantees individuals the right not to be subjected to excessive sanctions.' " U.S. Const., amend. VIII; *Miller v. Alabama*, 567 U.S. 460, 469 (2012) (quoting *Roper v. Simmons*, 543 U.S. 551, 560 (2005)). The eighth amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 997, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment).

¶ 22        An individual "commits the offense of being an armed habitual criminal if he or she

receives, sells, *possesses*, or transfers any firearm after having been convicted a total of 2 or more times of any combination" of qualifying offenses. (Emphasis added.) 720 ILCS 5/24–1.7(a) (West 2016). The offense of being an armed habitual criminal is a class x felony (720 ILCS 5/24–1.7(b) (West 2016)) subject to a sentencing range of 6 to 30 years in prison (730 ILCS 5/5–4.5–25(a) (West 2016)). A defendant convicted of being an armed habitual criminal must serve 85% of his sentence. 730 ILCS 5/3-6-3(a)(2)(ii) (West 2016).

¶ 23     We reject defendant's as-applied challenge to the constitutionality of the armed habitual criminal statute under the eighth amendment. Defendant relies heavily on the three-part test set forth by the United States Supreme Court in *Solem v. Helm*, 463 U.S. 277, 280, 292, 297 303 (1983), where the defendant's sentence of life imprisonment without the possibility of parole relating to his commission of nonviolent crimes was found "significantly disproportionate to his crime" and prohibited by the eighth amendment. Unlike in *Solem*, defendant was not sentenced to life imprisonment without the possibility of parole. Rather, defendant was sentenced to 8.5 years' imprisonment, which was 2.5 years above the minimum and significantly less than the maximum of 30 years' imprisonment. 730 ILCS 5/5-4.5-25(a) (West 2016); see *Harmelin*, 501 U.S. at 1001 (eighth amendment prohibits "extreme sentences that are 'grossly disproportionate' to the crime"); *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46 (discretionary sentences imposed within the statutory guidelines are presumed proper).

¶ 24     Defendant claims that because his convictions were for nonviolent crimes, the severity of his sentence was disproportionate to the seriousness of the offenses committed. But "Illinois courts have [ ] repeatedly held that the Habitual Criminal Act does not violate the eighth amendment," which has been applied equally to violent and nonviolent crimes. *People v. Fernandez*, 2014 IL App (1st) 120508, ¶ 41 (see cases cited therein); see *People v. Collins*, 2015 IL App (1st) 131145,

¶¶ 32, 35 (controlled substance case). Therefore, we find defendant's claim that his sentence was "cruel and unusual" punishment because it was so disproportionate to the severity of his offense as to shock the moral sense of the community to be without merit. See *United States v. Flanders*, 752 F.3d 1317, 1343 (11th Cir. 2014) (successful eighth amendment challenges in noncapital cases are "exceedingly rare"); *Rummel v. Estelle*, 445 U.S. 263, 272 (1980) (same); *People v. Johnson*, 2015 IL App (1st) 133663, ¶ 27 (the armed habitual criminal statute's purpose is "to help protect the public from the threat of violence that arises when repeat offenders possess firearms").

¶ 25                                           CONCLUSION

¶ 26        Defendant received conflict-free representation from his post-trial counsel and the sentence imposed by the trial court under the armed habitual criminal statute did not violate the eighth amendment's prohibition against "cruel and unusual" punishment. We affirm defendant's sentence and remand for new post-trial proceedings is not warranted.

¶ 27        Affirm.

¶ 28        PRESIDING JUSTICE WALKER, dissenting:

¶ 29        I respectfully dissent because Kaplan had an actual conflict where the prior lawyer was his business partner, supervisor, and uncle, and for those reasons, Kaplan failed to allege ineffective assistance as in the posttrial motion. When there is an actual conflict, Tolbert "need not prove prejudice in that the conflict contributed to the conviction." *People v. Austin M.*, 2012 IL 111194, ¶ 82. Tolbert only needs to show that a conflict of interest "adversely affected the lawyer's performance." Tolbert argued that if not for Kaplan's concern for his business partner, Tolbert's trial counsel, Kaplan would have framed several issues in the motion for new trial as ineffective assistance of counsel. The majority rejects the claims, finding that Tolbert did not "establish *** that framing the arguments as an ineffective assistance claim would have been successful.

9

Moreover, both arguments were rejected by the trial court as being without merit." ¶ 17. The majority erroneously affirms the denial of the motion for a new trial because Tolbert failed to show that Kaplan's acts contributed to the result. The majority's reasoning cannot be reconciled with our supreme court's rulings in *Austin M.* and *People v. Spreitzer*, 123 Ill. 2d 1, 13-14 (1988). A defendant need not show prejudice to justify a reversal of his conviction if the attorney representing him has an actual or possible conflict of professional interests. *Id* at 19.

¶ 30        When an attorney has a conflict of interest, there is reversible error where Tolbert shows that an actual conflict of interest adversely affected counsel's performance or where the trial court failed to conduct an adequate inquiry into the conflict that is brought to its attention. *Cuyler,* 446 U.S. at 350. Here, Kaplan's conflict precluded the claim of ineffective assistance of counsel. Moreover, Kaplan advised the trial court that Goldberg erred when he withdrew Tolbert's motion to quash arrest and suppress evidence. Kaplan stated, "the defense feels the motion to suppress evidence was prematurely withdrawn prior to trial because under the case of *People v. Horton* [. . .]." Despite this statement, the trial court failed to conduct an adequate inquiry into the conflict.

¶ 31        *People v. Washington*, 101 Ill.2d 104 (1984), demonstrates an actual conflict. The city attorney for Chicago Heights acted as defense counsel for Washington in a case for which counsel did not expect any Chicago Heights personnel to testify, but the prosecution called a Chicago Heights police officer as a witness against Washington. *Id*. At 108-09. According to the *Washington* court, "[t]he attorney was obliged to cross-examine and attempt to discredit one of the officers whose veracity and credibility he vouched for when acting as a prosecutor for his municipality." *Id*. at 113. The actual conflict of interest required reversal without proof that more vigorous cross-examination of the officer would have helped Washington achieve a better result.

¶ 32        Here Kaplan could have framed several issues raised in the motion for new trial as

ineffective assistance of counsel. However, had he done so, Kaplan would have charged his business partner, former employer, and uncle with performing the duties of an attorney in an objectively unreasonable manner that failed to meet prevailing professional norms. See *People v. Domagala*, 2013 IL 113688, ¶ 36. Under *Washington*, Tolbert has shown the kind of adverse effect on Kaplan's performance that requires reversal of the trial court's judgment. Because the actual conflict of interest arose on the motion for new trial, I would remand to the trial court for a new hearing on the motion, with Tolbert represented by conflict-free counsel. Accordingly, I respectfully dissent.