2022 IL App (1st) 191923-U

SIXTH DIVISION
February 18, 2022

No. 1-19-1923

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 12048 |
| | ) | |
| JASON ASHFORD, | ) | Honorable |
| | ) | Diane Cannon, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Justices Harris and Oden Johnson concurred in the judgment.

**O R D E R**

¶ 1     *Held*:   The trial court's imposition of a six-year sentence under Illinois's armed habitual criminal statute was not unconstitutionally disproportionate under the eighth amendment.

¶ 2     This is a direct appeal of the circuit court's sentencing of defendant Jason Ashford under Illinois's Armed Habitual Criminal (AHC) statute (720 ILCS 5/24-1.7 (West 2016)). At issue is whether Mr. Ashford's Class X sentence of six years of imprisonment, served at eighty-five percent, is unconstitutionally disproportionate under the eighth amendment. For the following reasons, we hold that it is not and affirm the trial court's imposition of sentence.

¶ 3                              I. BACKGROUND

¶ 4    The material facts of this case are largely undisputed. On December 2, 2017, a team of Chicago police officers executed a search warrant at Mr. Ashford's apartment. One officer testified that they forced entry after they announced themselves twice and no one opened the door. Once inside, the officer testified that he saw a man he identified in court as Mr. Ashford. A woman and two children were also present. The officers announced that they were there to execute a search warrant and detained Mr. Ashford as he was standing in a bedroom directly across from the entrance. Mr. Ashford complied with the officers' orders and told them that there was a handgun underneath the mattress in the bedroom. The officers searched under the mattress and found two loaded handguns. A further search of the residence uncovered no additional firearms. Another officer found correspondence from a utility company with Mr. Ashford's name and the address of the apartment in the common area of the kitchen.

¶ 5    At the police station, Mr. Ashford was read his *Miranda* rights, which he subsequently waived. He told the interviewing officers, "I keep the gun for protection to protect my family. This is my first gun arrest. I hope I am not in County for a while." On December 26, 2017, Mr. Ashford was charged by indictment with multiple offenses, including two counts of being an armed habitual criminal—one for each weapon found in his apartment—based on past qualifying convictions. Mr. Ashford's pre-trial public safety assessment characterized his AHC charges as nonviolent.

¶ 6    During the bench trial, the State proceeded on only the two AHC counts and entered two certified statements of Mr. Ashford's prior convictions into evidence. Both convictions—one from 2004 and one from 2006—were for the nonviolent offense of delivery of a controlled substance, a Class X felony. 720 ILCS 570/401(a) (West 2004). On April 22, 2019, Mr. Ashford was found guilty beyond a reasonable doubt of constructively possessing both firearms. On August 27, 2019,

the court concluded that the two counts merged and sentenced Mr. Ashford to six years of imprisonment to be served at eighty-five percent with three years mandatory supervised release upon release. 730 ILCS 5/504.5-25 (West 2016) ("parole or mandatory supervised release term shall be 3 years upon release from imprisonment."). Mr. Ashford now appeals.

¶ 7                                    II. JURISDICTION

¶ 8     On August 27, 2019 the trial court sentenced Mr. Ashford, and he timely filed his notice of appeal from the judgment against him that same day. This court therefore has jurisdiction over Mr. Ashford's direct appeal under article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. July 1, 2017), governing appeals from final judgments in criminal cases.

¶ 9                                    III. ANALYSIS

¶ 10    The AHC statute (720 ILCS 5/24-1.7(a) (West 2016)) reads, in relevant part, as follows:

> "(a) A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:
>
> * * *
>
> (3) any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher.
>
> (b) Sentence. Being an armed habitual criminal is a Class X felony."

¶ 11    Mr. Ashford's six-year sentence was the minimum possible sentence he could have received for his Class X conviction and, under the sentencing statute, that sentence had to be served at a minimum of eighty-five percent of the full sentence. 730 ILCS 5/3-6-3(a)(2)(ii) (West 2016) (requiring that "a prisoner serving a sentence for *** being an armed habitual criminal *** shall

receive no more than 4.5 days of sentence credit for each month of his or her sentence of imprisonment.").

¶ 12    On appeal, Mr. Ashford challenges his sentence for his AHC conviction under the eighth amendment only. No challenge is brought under the proportionate penalties clause of the Illinois Constitution. See Ill. Const. 1970, art. 1, § 11. Thus, this court limits its review to the constitutionality of Mr. Ashford's sentence under the federal eighth amendment.

¶ 13                              A. Standard of Review

¶ 14    A challenge to the constitutionality of a statute—whether on its face or as applied to a particular party—faces the strong judicial presumption that the statute is constitutional. *McElwain v. Office of Illinois Secretary of State*, 2015 IL 117170, ¶ 14. Although facial and as-applied challenges both address the unconstitutionality of a law, they present distinct legal issues. *People v. Thompson*, 2015 IL 118151, ¶ 36. A facial challenge requires "a showing that the statute is unconstitutional under any set of facts." *Id.* at ¶ 37. In contrast, an as-applied challenge requires a showing that "the statute violates the constitution as it applies to the facts and circumstances" of the challenging party's case. *Id.* Because an as-applied challenge necessarily depends on the particular facts of a given case "it is paramount that the record be sufficiently developed in terms of those facts *** for purposes of appellate review." *Id.*; see also *People ex rel. Hartrich v. 2010 Harley-Davidson*, 2018 IL 121636, ¶ 13 (recognizing that deference is given to trial court's underlying findings of fact and credibility in reviewing an as-applied challenge).

¶ 15    Here, the relevant facts regarding Mr. Ashford's conviction and sentence under the AHC statute, the nature of his predicate offenses, and the duration of his sentence are not in dispute. Mr. Ashford's as-applied challenge to his sentence under the eighth amendment therefore raises a question of law which we review *de novo. People ex rel. Hartrich*, 2018 IL 121636, ¶ 13 (citing

*People v. One 1998 GMC*, 2011 IL 110236, ¶ 20).

¶ 16                                    B. The State's Forfeiture Argument

¶ 17    As an initial matter, the State argues that Mr. Ashford forfeited his present challenge by raising it for the first time on appeal. Ordinarily, a defendant must present an as-applied constitutional challenge to his sentence at trial in order to develop the record as it pertains to the specific facts and circumstances of his claim. *Thompson*, 2015 IL 118151, ¶ 37 (citing *Webster v. Hartman*, 195 Ill.2d 436, 432 (2001). But where "[a]ll the facts and circumstances to decide the defendant's claim *** are already in the record" the claim may be raised and reviewed on appeal for the first time, even absent a prior evidentiary hearing. *People v. Holman*, 2017 IL 120655, ¶ 32; see also *People v. Martin*, 2018 IL App (1st) 152249, ¶ 12.

¶ 18    The State relies on *People v. McFadden*, 2016 IL 117424, to argue that Mr. Ashford's failure to raise the issue at the trial level prevented a factual record from being developed through an evidentiary hearing. In *McFadden*, our Supreme Court found that the defendant forfeited his undeveloped as-applied challenge to the unlawful use of a weapon by a felon statute. *Id.* at ¶ 36. In recognizing the dearth of factual findings in the record relevant to the defendant's as-applied claim, the Court reaffirmed that such challenges normally should be raised at trial to sufficiently develop the record before filing an appeal. *Id*. (citing *People v. Mosley*, 2015 IL 115872, ¶ 47). But the *McFadden* court did not require, as a matter of formal procedure, that an as-applied challenge must be raised before an appeal; nor did it require that an evidentiary hearing be held in all circumstances. Such a reading of *McFadden* elevates form over substance. "[W]here the evidentiary record developed below is sufficient, the constitutionality of a statute may be challenged on appeal." *Martin*, 2018 IL App (1st) 152249, ¶ 12 (citing *Holman*, 2017 IL 120655, ¶ 32). Only when the record is insufficiently developed at trial – such as in *McFadden* – should

the reviewing court find that a constitutional challenge raised for the first time on appeal has been procedurally defaulted. This is not such a case.

¶ 19    Here, the factual record from Mr. Ashford's trial and sentencing hearing provide this court with a sufficient basis upon which to rule on his constitutional claim. Indeed, the State fails to identify which facts were omitted from the record that would prevent this court from reviewing Mr. Ashford's constitutional claim. See, *e.g.*, *People v. Tolbert*, 2021 IL App (1st) 180117-U, ¶ 20 (noting that the State failed to identify any additional facts outside of the record that were necessary to address the defendant's as-applied challenge to his AHC sentence raised for the first time on appeal). Mr. Ashford's constitutional claim is therefore properly raised, and we move to the merits.

¶ 20                        C. Constitutionality of Mr. Ashford's Sentence

¶ 21    Mr. Ashford's appeal turns on whether his sentence of six years of imprisonment, served at eighty-five percent, for his conviction under the AHC statute is unconstitutionally disproportionate under the eighth amendment to the United States Constitution. The eighth amendment bars the infliction of "cruel and unusual punishment." U.S. Const., Amend. VIII. While "[i]nherent in that proposition is the concept of proportionality" (*Holman*, 2017 IL 120655, ¶ 33 (citing *Graham v. Florida*, 560 U.S. 48, 59 (2010))), courts have never required "[s]trict proportionality" between an offense and its penalty under the eighth amendment (*Graham*, 560 U.S. at 59-60 (internal quotation marks omitted)). In fact, the proportionality restriction of the eighth amendment is narrow and applies only in extreme and rare cases. See *Harmelin v. Michigan*, 501 U.S. 957, 998 (1991) (Kennedy, J., concurring) (recognizing that "in extreme cases [the proportionality principle] could apply to invalidate a punishment for a term of years.").

¶ 22    In *Solem v. Helm*, 463 U.S. 277 (1983), a case cited extensively by Mr. Ashford, the

Supreme Court delineated certain objective factors that courts can weigh when considering a penalty's relative proportionality. Those factors include (1) the severity of the punishment versus the gravity of the offense; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Id.* at 292-93.

¶ 23    Mr. Ashford argues that these factors weigh in favor of a finding that his sentence is unconstitutionally disproportionate. He asks us to reverse the trial court's judgment and remand his case for resentencing "under a proportionate Illinois sentencing scheme." For the following reasons, that argument fails, and we affirm the trial court's sentencing order.

¶ 24                    1. Gravity of the Offense vs. Harshness of the Penalty

¶ 25    Under the first *Solem* factor, Mr. Ashford argues that we should find that the harshness of the imposed criminal penalty is disproportionate to the gravity of the offense. *Solem*, 463 U.S. at 292-93. Traditionally, "nonviolent crimes are less serious than crimes marked by violence or the threat of violence." *Id.* at 292. And in Illinois, a reviewing court may look to the crime's classification in the Illinois Criminal Code, the sentence imposed, and the State's assessment of that sentence in weighing the relative gravity of the offense. *People v. Tetter*, 2018 IL App (3d) 150243, ¶ 75.

¶ 26    But, in considering these factors, courts should remain wary only of penalties that are "significantly disproportionate" or grossly disproportionate to the crime. *Solem*, 463 U.S. at 303. Even sentences that fall on the harsher end of the sentencing range for nonviolent offenses can be proportionate within the wide latitude of the eighth amendment. See *People v. Fernandez*, 2014 IL App (1st) 120508, ¶ 57 (upholding a life sentence without parole for the distribution of more than 900 grams of cocaine); see also *People v. Collins*, 2015 IL App (1st) 131145, ¶¶ 32, 35.

¶ 27    Mr. Ashford appropriately points out that neither his crime in this case (unlawful use or possession of a firearm by a felon) nor his predicate convictions (delivery of a controlled substance) were crimes of violence. And it bears noting that the specifics of the present charge do not strike us as warranting extended incarceration. Mr. Ashford was armed within his own home for the stated purpose of protecting his wife and children. But while these considerations may weigh in his favor, they must be weighed against the penalty imposed against him.

¶ 28    The AHC statute provides a mandatory sentencing range of six to thirty years of imprisonment. Mr. Ashford therefore received the minimum sentence for his conviction as an armed habitual criminal. Indeed, we note that at sentencing, Judge Cannon viewed Mr. Ashford's minimum sentence as an "opportunity at rehabilitation." Thus, even though Mr. Ashford's crimes were nonviolent, his sentence was significantly reduced compared to the alternative sentences that could have been imposed. The first *Solem* factor, therefore, does not weigh in Ms. Ashford's favor.

¶ 29                    2. Sentences Imposed for Other Crimes in Illinois

¶ 30    Mr. Ashford next argues that, under the second *Solem* factor, the sentence of imprisonment imposed under the AHC statute is disproportionate as compared to the sentences imposed for other crimes in Illinois. Crimes of violence or that involve threats of violence are generally "more deserving of punishment" *Solem*, 463 U.S. at 292-93; 298-99; see also *Tetter*, 2018 IL App (3d) 150243, ¶ 77-78 (identifying crimes of violence or crimes with children victims as more deserving of harsh punishment than nonviolent offenses). Mr. Ashford argues that a number of violent crimes in Illinois require a less severe sentence or a sentence that is equivalent to the one he received for nonviolent conduct. Some of those sentencing classifications include the following: (1) drug induced homicide (with a drug other than methamphetamine) – Class X (720 ILCS  5/9-3.3(b) (West 2018); (2) second degree murder – Class 1 (720 ILCS 5/9-2(d) (West 2018); (3) reckless

8

homicide – Class 2 or 3 (720 ILCS 5/9-3 (West 2018); and (4) hazing resulting in death – Class 4 (720 ILCS 5/12c-50(b) (West 2018).

¶ 31    Class 4 felonies are penalized at a minimum of one year of imprisonment (730 ILCS 5/5-4.5-45(a) (West 2018); Class 3 felonies are penalized at a minimum of two years of imprisonment (730 ILCS 5/5-4.5-40(a) (West 2018); Class 2 felonies are penalized at a minimum of three years of imprisonment (730 ILCS 5/5-4.5-35(a) (West 2018)); Class 1 felonies are penalized at a minimum of four years of imprisonment (730 ILCS 5/5-4.5-30(a) (West 2018)); and Class X felonies are penalized at a minimum of six years of imprisonment (730 ILCS 5/5-4.5-25(a) (West 2018)).

¶ 32    Certainly, Mr. Ashford's sentence of six years of imprisonment for his nonviolent conduct exceeds that which may be assessed, at a minimum, for the Class 1 to 4 felonies noted above, which all involve the death of another person. But it is the *degree* of difference between those sentences and what Mr. Ashford received that is at issue here. An additional one to five years of incarceration may reflect the General Assembly's judgment that an individual with a sufficiently extensive felony background—even nonviolent felonies—poses a substantial threat to the public health and safety when he is later found to be in possession of a firearm. Moreover, as the State points out, the General Assembly has specifically included offenses under the Illinois Controlled Substances Act as qualifying predicate offense, and it has not included an exception to the AHC's sentencing requirements for nonviolent offenders. If we were to hold that Mr. Ashford's sentence is grossly disproportionate based on the nonviolent nature of his predicate crimes, this court would be crafting such an exception where the legislature has declined to do so.

¶ 33    Eighth amendment jurisprudence does not tread so far into the legislature's domain. See, *e.g., Harmelin*, 501 U.S. at 998-99 (1991) (Kennedy, J., concurring) (noting that "the fixing of

9

prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is 'properly within the province of legislatures, not courts.' ") (citing *Rummel v. Estelle*, 445 U.S. 263, 275 (1980)). Whether extended incarceration is an effective manner to address the nonviolent conduct of people with felony backgrounds who arm themselves to protect their families and children in their homes is a matter of policy that is not for the courts to decide. Mr. Ashford's argument that his sentence be reduced to one that is less than the above-mentioned violent crimes would require this court to assume such a role, and we decline to do so here.

¶ 34        3. Sentences Imposed for Armed Habitual Criminals in Other Jurisdictions

¶ 35    Mr. Ashford's final appeal to neighboring jurisdictions' sentencing frameworks for similar conduct is largely foreclosed by the above finding that his sentence "does not lead to an inference of gross disproportionality." See *People v. Rhoades*, 2018 IL App (4th) 160457, ¶ 17 (quoting *Harmelin*, 501 U.S. at 1004-05 (Kennedy, J., concurring)). But even if we were to find that his sentence was indicative of gross disproportionality and looked to neighboring states, the cross-comparison analysis offered by Mr. Ashford only supports the constitutionality of his sentence.

¶ 36    In the four states examined by Mr. Ashford—Wisconsin, Indiana, Michigan, and New York—similar conduct to that of Mr. Ashford's may indeed result in less severe sentences. In Michigan, possession of a handgun by a person with a felony conviction is a felony subject to up to $5000 in fines and up to five years in prison. Mich. Comp. Law Ann. § 750.224f(5). In Indiana, unlicensed possession of a handgun by a person with a felony conviction can be classified as a felony, subject to one to six years in prison, with an advisory sentence of three years. Ind. Code § 35-50-2-6(b). In Wisconsin, possession of a firearm by a person with a felony conviction may be penalized with a fine, a prison sentence up to twenty years, or both. Wis. Stat. Ann. §§ 939.6195 & 939.62(1). And in New York, possession of a weapon by a person with any prior convictions

may be punished at a minimum of one year or one third the maximum sentence, and a maximum term of seven years. N.Y. Penal Law §§ 265.02(1); 70.00.2(d), 3(b).

¶ 37    If Mr. Ashford were convicted for similar conduct in any of the above-mentioned states, he may have faced a less severe penalty, such as a fine, or a prison sentence of less than a year. Illinois, in criminalizing the unlawful possession of firearms by individuals with past felony convictions, certainly outflanks its neighbors in issuing harsher punishment for such conduct. But, this fact does not help this court resolve the question of whether Mr. Ashford's sentence is *unconstitutionally* disproportionate to his conduct. Not only does the eighth amendment not require strict proportionality between conduct and penalty, but it also does not require uniformity between the states in penalizing similar conduct. The degree of difference between Illinois's sentencing framework for armed habitual criminals and neighboring states may reflect a reasoned response by the General Assembly to different circumstances in Illinois. It is no secret that Illinois faces some of the highest rates of gun violence in the country. The people of Illinois, through their elected representatives, have come to the conclusion that more severe firearm possession laws are an effective means to stem gun violence when applied to individuals with past felony convictions. Whether this is have the desired effect is subject to debate—but, absent some constitutional infirmity, it is a debate that must be had in the legislature and not in the courts. Mr. Ashford's sentence simply is not one that exceeds the permissible bounds of the eighth amendment.

¶ 38                                    4. Remedy

¶ 39    While we are sympathetic to Mr. Ashford's arguments, in addition to the fact that we do not view his sentence as violative of the eighth amendment, we are also at a loss as to how we would fix his sentence to avoid a constitutional infirmity.

¶ 40     Mr. Ashford argues that we can remand his case for resentencing "pursuant to a more

11

proportionate, Illinois sentencing scheme." In support of this request, he cites *People v. Aikens* and *People v. Gipson*. 2016 IL App (1st) 133578, ¶ 38; 2015 IL App (1st) 122451, ¶¶ 77-78. Neither case, however, guides this court in the manner Mr. Ashford suggests. As an initial observation, both *Aikens* and *Gipson* dealt with juvenile defendants and thus a separate set of interests that are absent here. Further, both cases were brought under the proportionate penalties clause of the Illinois Constitution, not the federal eighth amendment. See*, e.g.*, *People v. Franklin*, 2020 IL App (1st) 171628, ¶ 55 (recognizing that "the proportionate penalties clause goes further than the eighth amendment in offering protection against oppressive penalties.") (citing *People v. Minniefield,* 2020 IL App (1st) 170541, ¶ 37).

¶ 41    In *Aikens*, we remanded for resentencing after the juvenile defendant's sentence had been mandatorily enhanced under prior law. 2016 IL App (1st) 133578, ¶ 38. We found that the mandatory enhancement as applied to the defendant's sentence violated the proportionate penalties clause of the Illinois constitution. *Id.* Upon remand, however, the trial court was instructed to apply a new juvenile sentencing scheme that had been enacted by the General Assembly. *Id.* And in *Gipson*, we remanded for resentencing without a mandatory firearm enhancement after it was found to be unconstitutional as applied to the juvenile defendant under the proportionate penalties clause of the Illinois constitution. 2015 IL App (1st) 122451, ¶ 69 ("the statutory scheme is unconstitutional under the Illinois Constitution of 1970, as applied to defendant, in that his sentence shocks the moral sense of the community."). But this court's instructions on remand still adhered to the sentencing range enacted by the General Assembly, albeit without the mandatory firearm enhancement. *Id.* at ¶ 78.

¶ 42    Here, Mr. Ashford does not direct us to a new or generalized statutory framework that we could apply to his sentence as an alternative to the one set out by the legislature. Mr. Ashford refers

to the lower minimum sentences that can be imposed for the Class 2 felony of aggravated unlawful use of a weapon committed by a person previously convicted of a felony (three years), and the Class 3 offense of unlawful use of a weapon by a person previously convicted of a felony (two years). While Mr. Ashford arguably could have been charged, convicted, and sentenced under either of these two criminal statutes, Mr. Ashford's request would require this court to alter the final charging decision of the prosecutor, an action that we have no authority to undertake.

¶ 43    In sum, although we understand Mr. Ashford's belief that it is unfair that he received such a harsh sentence for nonviolent conduct, his request for a reduced sentence would require us to exceed our judicial role, usurp the function of the legislature, and enact new sentencing guidelines from the bench. The minimum penalty available for Mr. Ashford's conviction was imposed by the trial court. While the the severity of this sentence in this factual scenario may raise public policy questions, this court must defer to the legislature to resolve those questions so long as the penalty imposed is not *unconstitutionally* disproportionate.

¶ 44                                          IV. CONCLUSION

¶ 45    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 46    Affirmed.